

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 MAY 27  P 4: 02

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

**U.S. Department of Justice**

United States Attorney

District of Maryland
Northern Division

| | | |
|---|---|---|
| Rod J. Rosenstein<br>United States Attorney<br><br>John F. Purcell<br>Assistant United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4855<br>MAIN: 410-209-4800<br>FAX: 410-962-3124<br>TTY/TDD: 410-962-4462<br>Jack.Purcell@usdoj.gov |

May 5, 2014

Christopher C. Nieto, Esq.
The Law Office of Christopher C. Nieto
231 E. Baltimore Street, Suite 1102
Baltimore, MD 21202

    Re:   United States v. Eugene Arnell Thomas
            <u>Criminal Number RDB 13-0504</u>

Dear Mr. Nieto:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). This offer must be accepted by **5:00 p.m. on May 12, 2014**, following which it will be withdrawn and deemed to be rejected. If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

      1.     The Defendant agrees to plead guilty to Count One of the pending Indictment in which he is charged him with violation of 21 U.S.C. § 846 (a), conspiracy to possess with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

1

  Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

The government would establish beyond a reasonable doubt that from on or about May 1, 2011 until on or about April 25, 2012, in the State and District of Maryland, and elsewhere, the Defendant:

- knowingly and intentionally
-conspired with one or more persons,
- to knowingly, intentionally and unlawfully
- possess with intent to distribute,
- a mixture or substance containing five or more kilograms of cocaine, and
-a mixture or substance containing one or more kilograms of a heroin,

Penalties

3. The maximum sentence provided by statute for the violation of 21 U.S.C. § 846 to which the Defendant is pleading guilty is as follows: life imprisonment, a ten year minimum mandatory sentence of imprisonment, a five-year term of supervised release and a fine of up to $10,000,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

  b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

  c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

  e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable advisory sentencing guidelines factors:

### Factual Stipulation

(a) The parties stipulate and agree, and the evidence in this case proves that:

In January 2012, detectives with the Harford County Sheriff's department initiated an investigation into drug trafficking by certain individuals, including Eric Winder. The investigation utilized court orders authorizing interception of wire communications over certain cellphones used by these individuals. These interceptions revealed that Winder was distributing cocaine to certain customers and that Winder's sources included the Defendant's brother-in-law, Edward Kearney, who lived in Atlanta, Georgia, as did the Defendant. On April 18, 2012, court ordered wiretaps on two phones associated with Kearney, (443)***5631 and (443)***3625,

4

revealed that Kearney agreed to meet a customer, Edward Harris, in Baltimore the following day at which time Kearney would distribute a quantity of cocaine to Harris.

On April 19, 2012, after a series of intercepted calls between Kearney and Harris in which the time and place of the above described meeting was arranged, agents observed a meeting between Kearney and Harris on a parking lot in the Canton area of Baltimore City, MD. Just prior to the meeting, Kearney, who had traveled from Atlanta, Georgia to conduct this distribution, was observed at 1200 S. Conkling Street, Apt. 416, Baltimore, Maryland ("Conkling Street"). Kearney was observed as he was driven by Tara Sneed ("Sneed") from the Conkling Street apartment to the nearby meeting with Harris. Upon Kearney's arrival at the meeting, he exited the vehicle driven by Sneed and entered Harris's vehicle while carrying a backpack. At this point detectives converged and arrested Kearney and Harris. 1.5 kilos of cocaine was recovered from the backpack.

Kearney was subsequently prosecuted in the course of which he identified the Defendant as the source of the cocaine he distributed. Kearney also described the manner and means by which the Defendant obtained cocaine and heroin from a source in Atlanta and how the Defendant recruited, utilized and paid couriers, including Tara Sneed, to transport kilos of heroin and cocaine to Baltimore for distribution and then to transport the cash proceeds from these customers to the Defendant in Atlanta.

On April 19, 2012, a search warrant executed at Conkling Street resulted in the recovery of two kilos of heroin and one kilo of cocaine, the seizure of $71,000 and the arrest of the Brian Drake, who had resided in the apartment since December 2011 when he rented the apartment with the assistance of the Defendant. Drake and the Defendant had used Conkling Street receive, store and distribute multi-kilo shipments of heroin and cocaine obtained with the assistance of the Defendant from the Defendant's source of supply and was transported by couriers, such as Sneed, recruited by the Defendant. The cocaine seized from Kearney and seized in the Conkling Street Apartment on April 19 had been delivered by Sneed to Conkling Street that day. Also recovered during the search of the Conkling Street Apartment were numerous items used to package drugs and money and a cash counting machine.

Prior to April 19, 2012, DEA agents had observed Kearney and the Defendant at the Defendant's residence at 115 Celtic Court, Ellenwood, GE ("Celtic Court"). On or about April 25, 2012, a search warrant was executed at that location. At the time of the search the Defendant and Sneed resided at Celtic Court. Kearney had resided there until moving to his own apartment. Sneed had moved to the Defendant's residence from Baltimore at the Defendant's invitation in or around May 2011. In 2009 and 2010 Sneed had worked as a drug courier for the Defendant and she agreed to do so again upon moving to Atlanta. During the search of Celtic Court agents recovered a daily planner maintained by Sneed. Sneed has confirmed that she made

explicit entries in the planner that documented at least 25 drug courier trips Sneed made at the request and direction of the Defendant between August 2011 and April 2012, as well as corresponding return trips with cash. The quantities of cocaine and heroin she transported for the Defendant were distributed to either the Defendant's own customers in Maryland or to individuals who had obtained the drugs from the Defendant's source in Atlanta with the Defendant's assistance. Prior to renting Conkling Street in December 2011, the Defendant, Drake, Sneed, Kearney and other members of the conspiracy used other locations in Baltimore to receive, store and distribute cocaine and heroin that was transported from Atlanta.

The search of Celtic Court on April 25, 2012, also resulted in the recovery of two "jack presses" that were found in the garage. Cooperating members of the conspiracy observed the Defendant and other members of the conspiracy break up packaged bricks of heroin and cocaine, dilute them with various cutting agents and use similar jack presses located at stash houses maintained in Atlanta by the Defendant to re-compress "bricks" of diluted kilos of cocaine and heroin in order to make them appear as originally packaged.

The Defendant was not arrested until early 2014. Evidence from federal court ordered interceptions of wire communications and texts obtained during a separate FBI (Baltimore) investigation involving the Defendant revealed that after the April 19, 2012, arrest of Drake and Kearney and the drug seizure from Conkling Stree, the Defendant continued to direct couriers to transport kilo quantities of heroin from Atlanta for distribution to the Defendant's customers in Baltimore until August 2013. On May 24, 2013, during the FBI investigation, the Defendant was audio and video-taped as he met in a car in South Baltimore with one Anthony Miles to whom the Defendant delivered at least 300 grams of heroin. Various texts by the Defendant were intercepted in which he arranged for the delivery of heroin by a female courier. On July 31, 2013, the Defendant was observed to meet with a female courier at an apartment complex in South Baltimore where the Defendant maintained a local residence. During this meeting the Defendant directed the female courier to enter a car driven by a customer who then drove away with the courier. Intercepted communications and surveillance of the Defendant and his couriers revealed at least five instances when the Defendant travelled to Baltimore by air one day before the arrival of the courier, who traveled by bus. Upon their arrival, the Defendant would meet with the couriers at the Defendant's South Baltimore apartment. Other than the Defendant, individuals identified during the FBI investigation have been indicted in federal case number ELH 13-512 (MD).

## Guideline Stipulation

(b). The parties stipulate and agree that pursuant to U.S.S.G. §§ 2D1.1(c)(2) (drug quantity table), 2D1.1n.8(D) (drug equivalency table) and 1B1.3 (relevant conduct), the applicable advisory base offense level for this violation of 21 U.S.C. § 846 is **36** because 1) the defendant knew and could reasonably foresee that the offense conduct involved at least 10 kilograms of heroin and at least 50 kilograms of cocaine, and 2) because the offense conduct related to Count One that can be attributed to the Defendant and which the Defendant knew of and could reasonably foresee involved combined quantities of heroin and cocaine equivalent to at least 10,000 kilograms of marijuana.

The parties agree to reduce the base offense level by two levels, to level **34**, pursuant to the directive of the Attorney General of March 13, 2014, and the pending amendment to the guidelines by the Sentencing Commission which provides for a two-level reduction for all drug offenses. The Defendant has agreed that he will not seek and should not receive any further reduction should the Amendment proposed by the Attorney General and adopted by the Sentencing Commission be made retroactive.

Pursuant to U.S.S.G. § 3B1.1 (aggravating role), the parties further stipulate and agree that the offense level should be increased by two-levels, to level **36**, because of the Defendant's role as an organizer, leader manager or supervisor of other individuals involved in the criminal activity underlying the drug trafficking conspiracy charged in Count One.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The resulting offense level is **33**.

There is no agreement as to the Defendant's criminal history or Criminal History Category. The Defendant understands that his criminal history could affect his final offense level and criminal history category if he is found be a career criminal, as defined by U.S.S.G. Section 4B1.1.

7.      This Office and the Defendant agree that with respect to the calculation of criminal history and the calculation of the advisory guidelines range no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. This agreement does not prevent the Defendant from seeking a variance from the advisory guidelines pursuant to 18 U.S.C. § 3553.

### Obligations of the United States Attorney's Office

8.      At the time of sentencing, this Office will be free to recommend any sentence within the final advisory sentencing guideline range determined by the court. The government will dismiss Count Two.

### Waiver of Appeal

9. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their federal rights to appeal as follows:

a)      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the final adjusted advisory guidelines range, the determination of the defendant's criminal history and criminal history category, the weighing of the sentencing factors under 18 U.S.C. § 3553, and the decision whether to impose and the calculation of any term of imprisonment, fine, and term or condition of supervised release).

c)      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any federal investigating agency.

### Obstruction or Other Violations of Law

10. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (I) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

11. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

12. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
John F. Purcell, Jr.
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I understand that I am subject to a ten year minimum mandatory sentence. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation, in particular the guidelines as to drug quantity and role in the offense, with my attorney, and I do not wish to change any part of it. I am completely satisfied with every aspect of the representation of Mr. Nieto.

_5/16/14_   _____
Date        Eugene Arnell Thomas

I am Mr. Thomas's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_5/16/14_   _____
Date        Christopher Nieto, Esq.
            Counsel for Eugene Thomas